# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **RONNIE L. EDWARDS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00032 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Kimberly Varillo and Heather Benderson, Assistant Regional Counsel, and Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I vacate the final decision of the Commissioner of Social Security and remand for calculation and payment of benefits.

## I

Plaintiff Ronnie Lee Edwards filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and social security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§

401-433, 1381-1383d (West 2003 & Supp. 2010).  Jurisdiction of this court exists

pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Edwards filed for benefits in September 2006, alleging disability since

August 17, 2004, due to arthritic degenerating discs, heart problems, carpal tunnel,

and numbness in his right leg.  His claim was denied initially and upon

reconsideration.  Edwards received a video hearing before an administrative law

judge ("ALJ"), during which Edwards, represented by counsel, and a vocational

expert ("VE") testified.  The ALJ partially denied Edwards' claim and the Social

Security Administration's Appeals Council denied his Request for

Reconsideration.[1]  Edwards then filed his Complaint with this court, objecting to

the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed

and orally argued the issues.   The case is ripe for decision.

---

[1] On March 1, 2008, Edwards' became a person of "advanced age" under
regulations.  The ALJ found that Edwards' age after that date, combined with his
conditions, rendered him disabled under the Act.  Thus, the current appeal relates to
Edwards' claims for the bounded period of August 17, 2004, through March 1, 2008.

## II

Edwards was 53 years old when he filed for benefits, a person "closely approaching advanced age" under the regulations. *See* 20 C.F.R. § 404.1563(d) (2010). Edwards, who has a high school education, has previously worked in the textile industry as a pad dryer operator and drawing machine operator. Edwards has not engaged in substantial gainful activity since August 2004, when he was fired from his job for allegedly being unable to work a full-time schedule.

Edwards suffered a workplace injury to his back on December 17, 2001. Edwards was diagnosed with a lumbosacral strain and was recommended physical and medicative therapy. Edwards' injury improved with physical therapy, but was negatively affected when breaks were cut from his job. Reintroduction of breaks, as well as an adjustment to his seating at work, addressed this issue. From 2002 through mid-2004, Edwards continued chiropractic adjustments, physical therapy, and medication treatment, which enabled him to continue his regular work. His primary care was provided by physician's assistant Brenda McKinney, PA-C, at Tri County Orthopedics. On several occasions during this period McKinney cleared Edwards for normal work.

On July 29, 2004, Edwards presented to McKinney and reported degeneration of his conditions. He reported that while he was able to work his regular job for the

first two days of the week, by the third day he experienced increased pain and difficulty sleeping. By the fourth day, Edwards stated that he required several days off work for the pain to subside. Because of the ongoing nature and severity of Edwards' complaints, McKinney referred him for an MRI and wrote a note stating that he could work his regular job, but for no more than three days in a row. The MRI showed disk desiccation and degeneration, but no evidence of herniation or spinal stenosis. Based on these results, McKinney wrote another note limiting Edwards' work to two days at a time and referred Edwards to Emidio Novembre, DO, for further pain management consultation.

Following Edwards' MRI results, McKinney also referred Edwards to C.S. Whitman, M.D., an orthopedist within the Tri County Orthopedics office. Dr. Whitman noted that Edwards' gait and station were normal and that he was able to change from sitting to standing and vice versa without difficulty. Edwards had no palpable spasm, step off, or deformity. Dr. Whitman noted only some discomfort in Edwards' left and right side bend. Dr. Whitman also noted that Edwards was able to lean over the exam table and grab his boots from the floor, involving a fairly significant amount of flexion at the waist. Dr. Whitman reviewed Edwards' MRI and found that it showed no evidence of herniation, foraminal stenosis, or nerve root impingement. The MRI did confirm, however, mild disc desiccation. Dr.

Whitman diagnosed Edwards with chronic back pain with degenerative disc disease of the lumbar spine, affected by possible facet pain generators. Because of the prolonged nature of Edwards' symptoms and the ineffectiveness of his ongoing therapy, Dr. Whitman recommended discography and that Edwards limit his work to three shifts a week, with a day off between each shift.

On McKinney's recommendation, Edwards also began pain management treatment with Dr. Novembre in October 2004. Dr. Novembre initially prescribed epidural steroid injections. Edwards reported these injections were ineffective. Dr. Novembre continued to regularly see Edwards for therapeutic drug monitoring through 2008. During these visits, Dr. Novembre made adjustments to Edwards' medications, and Edwards went through several successions of different prescription combinations with varying results. Throughout this period, Edwards complained of continuing low back pain and finding limited pain relief via medication.

Dr. Whitman ultimately ruled out surgery for Edwards' condition. In March 2005, Dr. Whitman performed a functional capacity evaluation showing permanent limitations of sitting for a maximum of thirty minutes; lifting a maximum of twenty-five pounds; carrying a maximum of twenty pounds; and no repetitive bending, stopping, or lifting. He noted that Edwards would need to be able to

change from sitting to standing and vice versa freely as needed, and he rated Edwards as suffering from a five percent permanent partial impairment of his lower back.

In January 2007, William Humphries, M.D., of the Virginia Department of Rehabilitative Services, performed a consultative physical examination. Dr. Humphries found a moderately reduced range of motion of Edwards' back and hips and that Edwards' gait was within normal limits, excepting some stiffness in the lumbar region. Dr. Humphries diagnosed Edwards with borderline diastolic hypertension, chronic lumbar strain with degenerative disc disease by history, mild degenerative joint disease, atrial fibrillation, and several other conditions related to Edwards' extremities. He opined that Edwards would be limited to sitting, standing, and walking six hours in an eight-hour workday and to lifting fifty pounds occasionally, and twenty-five pounds frequently. He imposed no restrictions on Edwards' ability to crawl, stoop, kneel, or crouch, or to be exposed to fumes, but recommended avoiding heights and hazards.

On January 27, 2007, Donald Williams, M.D., a state agency physician, reviewed Edwards' medical records and completed a residual functional capacity assessment. He found that Edwards suffered from the medically determinable impairments of high blood pressure and lumbar strain, but found no functional

limitations other than those found by Dr. Humphries. Dr. Williams noted that he took under consideration Edwards' claims that his daily activities were significantly limited and that these claims were consistent with the limitations indicated by other evidence in the case. Dr. Williams found that "despite ongoing treatment, [Edwards] continues to have pain which significantly impacts on his ability to perform work related activities." (R. at 386.) Dr. Williams found Edwards' statements to be partially credible. A second residual functional capacity assessment confirmed Dr. Williams' findings.

In late 2007 and early 2008, Edwards returned to Dr. Novembre for continued pain management treatment. Dr. Novembre ordered another MRI which showed continuing degenerative disc disease and facet arthritis at multiple levels with no significant central canal or foraminal compromise. Dr. Novembre started Edwards on a regimen of TENS unit therapy and adjusted his medications several times.

Through this period, the record also indicates complaints of mental impairment. Beginning in January 2005, Edwards complained to Dr. Novembre of depression. Dr. Novembre added depressive medications to Edwards' therapeutic regimen. Through 2006 and 2007, Edwards continued to complain of pain and anxiety symptoms, primarily related to his lower back pain.

On March 16, 2007, Edwards sought treatment at Tri Area Health Clinic for complaints of depression. He relayed that this condition was related to financial concerns and relationship problems, and that he occasionally experienced suicidal ideation and felt internal pressure from perceived failures to handle his responsibilities and deal with others. Elizabeth Hubbard, a nurse practitioner, found that Edwards was more anxious than depressed and prescribed a panic disorder medication.

In May 2007, Louis Perrott, Ph.D., a state agency psychologist, reviewed Edwards' medical records and found no severe mental impairment. Dr. Perrott opined that Edwards had no restrictions on daily living; maintaining social functioning; no periods of decompensation; and only mild difficulties in maintaining concentration, persistence, or pace.

In August 2007, Edwards presented for an initial intake session at Mount Rogers Community Counseling Services for panic attacks, mood instability, agoraphobia, sleep disturbances, decreased tolerance for frustration, infrequent suicidal idealization, and memory impairment. The center recommended twice a month counseling sessions. Edwards attended two sessions in September and October of 2007, but did not show up for following appointments.

After reviewing the evidence, the ALJ found that Edwards suffered from the following severe impairments: lumbar strain with degenerative disc disease and degenerative joint disease, neuropathy of lower extremities, and headaches. The ALJ found that Edwards' claims of depression and anxiety did not cause more than minimal limitations to his ability to perform basic mental work activities and were thus nonsevere. (R. at 19.) Taking Edwards' severe impairments into account, the ALJ found that "none of the claimant's treating or examining physicians of record has reported any of the necessary clinical, laboratory, or radiographic findings that would be listing level." (R. at 20.)

The VE testified that someone with Edwards' residual functional capacity, age, and work history would be subject to a "severely eroded occupational base," but could perform a limited range of light level work in occupations such as cashier, entertainment attendant, and transportation attendant. (R. at 56-57.) According to the VE, there are approximately 2,400 jobs in the region and 105,000 jobs in the national economy. Relying on this testimony, the ALJ concluded that Edwards was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

However, the ALJ found that beginning on March 1, 2008, the date that Edwards' age category changed from a person "closely approaching advanced age"

to one of "advanced age," Edwards became disabled based on a direct application of Medical-Vocational Rule 202.06.   (R. at 28.) Thus, the ALJ granted benefits after that date, but denied Edwards' claims for the period of August 17, 2004 through March 1, 2008.

Edwards' now challenges the unfavorable portion of the ALJ's ruling. Edwards argues that the ALJ's decision regarding the period in question is not supported by substantial evidence.   For the reasons detailed below, I remand the case.


III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).   The standard for disability is strict.   The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A) (2010).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process.   The Commissioner considers whether the claimant:

(1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation

omitted).   This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).   It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.   It is not the role of this court to substitute its judgment for that of the Commissioner.   *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Edwards argues that substantial evidence does not support the ALJ's finding that Edwards did not qualify for disability status until he reached advanced age under the regulations.   Specifically, Edwards argues that the ALJ did not properly consider the cumulative effects of his impairments and that the ALJ improperly accorded little weight to several of Edwards' treating sources. Relatedly, Edwards challenges the ALJ's decision to discount some of the vocational expert's testimony that was elicited on cross-examination.   Finally, Edwards argues that substantial evidence does not support the ALJ's finding that Edwards did not have a severe mental impairment.

Edwards has presented evidence of a long-term lumbar strain injury, with degenerative disc disease and degenerative joint disease, neuropathy of the lower extremities, and headaches.   Edwards also asserts nonexertional impairments related to depression, anxiety, inability to concentrate, and memory loss.   Edwards

has been under consistent and long-term physical and medicative care for his back injury since the 2001 accident. The records regarding his physical impairments reveal that his back condition, despite aggressive treatment, continued to degenerate over a several-year period. Edwards has also seen his primary care sources for depression resultant from his physical limitations and has taken anti-depressants on an intermittent basis, but has not sought consistent counseling.

To reach her conclusion regarding Edwards' physical impairments, the ALJ relied on evidence that is insufficient to support her decision. The ALJ determined that Edwards' "allegations of disabling pain and functional loss are undermined by the lack of intensive or extensive treatment" and that his "allegations are <u>not</u> found to be fully credible as severe functional limitations are not documented or supported by the medical evidence of record." (R. at 24) (emphasis in original.) In making this determination, the ALJ relied heavily on Edwards' "fairly normal" activities of daily living, as well as a 2007 medical record noting that Edwards injured his knee cap after falling off a twelve foot ladder while assisting a friend, and a notation by Dr. Whitman that Edwards was able to reach his boots on the floor during an examination. *Id.* While I grant the ALJ great deference regarding credibility determinations, her assessment here contradicts substantial evidence on the record regarding Edwards' claims of pain and functional limitation.

First, contrary to the ALJ's finding, the record shows that Edwards consistently and aggressively sought treatment for his back injury for the seven-year period between his injury and the ALJ's hearing date. Edwards pursued all avenues of therapy, including physical therapy, pain management therapy, and regular follow-up appointments with his treating sources. Furthermore, the record demonstrates that Edwards fully complied with the recommendations of his providers. *See* SSR 96-7 ("Persistent attempts by the individual to obtain relief of pain or other symptoms . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.") Although Edwards may have presented some symptom magnification, the overwhelming conclusions made by Edwards' treating physicians, counselors, consultative treating sources, as well as those of state agency reviewing doctors, were that Edwards' claims of physical pain were credible. These reports all came to the conclusion that Edwards suffered from a severe lumbar strain that was resistant to treatment and degenerating over time. That Edwards admitted to climbing a twelve-foot ladder on one occasion or could reach his boots on an examination floor are not, by themselves, substantial evidence that would undermine the long-term and consistent conclusions of the medical opinions on record.

The ALJ also discredited Edwards' claims on the basis of Edwards' testimony that he lives in a house with his family, is independent with self-care, prepares simple foods, helps out with cleaning around the house, goes outside as much as possible, shops in stores for short periods, goes fishing, and attends church and doctor appointments. These activities of daily living are insufficient to undermine Edwards' claims because they do not implicate his ability to handle the prolonged exertional requirements of sustained employment.

Edwards' medical records show that, during the period in question, his functional limitations lay not a total inability to work, but rather, in an inability to work consistently for multiple days in a row. The daily living activities taken into consideration by the ALJ do not bear on the matter of Edwards' ability to work on such a sustained basis. In making a disability determination, the ALJ "must exercise great care in reaching conclusions about [the claimant's] ability to complete tasks under the stresses of employment during a normal workday or work week . . . based on [the claimant's] ability to complete tasks in other settings that are less demanding, highly structured, or more supportive." 20 C.F.R. Pt. 404, subpt. P, app'x 1, § 12.00(C)(3). The ALJ's assessment regarding a claimant's ability to complete tasks must evaluate all the evidence, with an emphasis on how independently, appropriately, and effectively the claimant is able to complete tasks

on a sustained basis.  *Id.*  Here, the ALJ placed undue emphasis on Edwards'

activities of daily living, especially since these activities do not bear on the issue of

whether Edwards could work consistently on a sustained basis.

Finally, I find persuasive the fact that Edwards worked for 33 years at the

same employer, from the time he left high school until his termination.   (R. at 34.)

Moreover, Edwards continued to work after his 2001 workplace injury, and worked,

albeit at reduced hours, even when his conditions worsened in 2004.   He was

terminated only after his reduced capacity progressed to the extent that he could no

longer consistently work the hours required to meet his employer's needs.   (R. at

47-48.) Edwards' extensive work history and attempts to continue working despite

his disability support his credibility.   *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir.

1998) ("[A] good work history may be deemed probative of credibility . . . ."); SSR

96-7p.

In concluding that Edwards' physical impairments were not of a severity to

meet or equal any listing of disability under the Act, the ALJ accorded some weight

to the opinions of the state non-examining agency physicians, moderate weight to

the consultative opinion of Dr. Humphries, and some weight to the treatment records

of Dr. Novembre.   The ALJ found that controlling weight could not be given to

Edwards' treating sources at Tri County Orthopedics, Dr. Whitman and McKinney.

The ALJ has the exclusive authority to evaluate a medical opinion in the record and, when assessing the weight given to a medical opinion, the ALJ should consider whether the opinion is supported by laboratory findings and the record as a whole. 20 C.F.R. § 404.1527 (2010). A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2) (2010).

The ALJ afforded very little weight to the opinions of Dr. Whitman and McKinney despite the fact that their assessments of functional limitations are consistent with the medical record. The only evidence undermining their medical diagnoses is the reports of the state agency reviewing physicians. However these reports themselves are inconsistent. The non-treating state agency physicians found that "despite ongoing treatment, [Edwards] continues to have pain which significantly impacts on his ability to perform work related activities." (R. at 386.) However, these reports found no functional limitations whatsoever in Edwards' residual functional capacity assessment. Although there is some merit to the ALJ's finding that Dr. Whitman's and McKinney's conclusions about Edwards' limitations were perhaps more severe than is fully supported by the medical record, the evidence relied upon by the ALJ to wholly reject their opinions is insufficient.

Here, Dr. Whitman's and McKinney's assessments of Edwards' MRI results and his overall degenerating condition comport with those of the state agency and consultative doctors. Therefore, their assessments were entitled to more weight than the ALJ granted.

Nevertheless, despite the increased deference owed to treating physicians, ultimate determinations regarding disability status are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (2010) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). With regard to Dr. Whitman's and McKinney's opinions that Edwards was limited to working less than full-time, the ALJ found that these opinions were accordingly not entitled to any particular weight or deference. (R. at 26.) While the ALJ should not abdicate her statutory responsibility by unquestionably granting controlling weight to treating source opinions regarding a claimant's disability status, the ALJ need not wholly discount those opinions if they are supported by the objective clinical findings and other opinion evidence of record. *See* 20 C.F.R. §§ 404.1527(d)(4), (e); 416.927(d)(4), (e) (2010). Edwards sought treatment at Tri County Orthopedics on a regular basis for seven years. In his earlier years of treatment, both Dr. Whitman and McKinney authorized Edwards' return to normal work duties. Their opinions only changed after Edwards'

condition continued to deteriorate and failed to respond to treatment. Their recommendations of reduced shifts aligned with their recommendations for more aggressive physical therapy and pain management treatment. Edwards complied with these additional recommendations, and the consulting doctors who administered these treatments, especially Dr. Novembre, who also treated Edwards on a regular basis over a period of years, came to relatively uniform assessments of Edwards' condition. Based on the overall consistency of the record, substantial evidence does not support summarily discounting Dr. Whitman's and McKinney's treating source opinions regarding Edwards' ability to work on a sustained basis.

Dr. Whitman's and McKinney's assessments also bear upon Edwards' specific challenge to the ALJ's rejection of an answer to a hypothetical question asked of the VE at the hearing. In response to a question posed during cross-examination, the VE testified that the occupations he suggested presupposed an ability to work forty hours a week on a sustained basis. The VE further testified that an inability to work such hours would disqualify Edwards from the VE's suggested occupations. However, the ALJ concluded in her findings that the VE's testimony in these responses assumed limitations not established by the evidence and so discounted it.

It is well-settled that the testimony of a vocational expert constitutes substantial evidence for purposes of judicial review where his or her opinion is based upon a consideration of all the evidence of record and is in response to a proper hypothetical question which fairly sets out all of a claimant's impairments. *Walker v.Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The determination of whether a hypothetical question fairly sets out all of the claimant's impairments turns on two important issues: (1) whether the ALJ's finding as to the claimant's residual functional capacity is supported by substantial evidence; and (2) whether the hypothetical adequately set forth the residual functional capacity as found by the ALJ. *Id.*

For the same reasons outlined above, I find the ALJ's rejection of the VE's testimony to be in error. Substantial evidence does not support the ALJ's finding that Edwards was able to work on a sustained basis, and thus I find the VE's testimony regarding a hypothetical claimant with diminished capacity pertinent. Step five of the DIB and SSI evaluation process requires a consideration of whether the claimant can perform other work existing in significant numbers in the national economy. Because the VE testified that Edwards would be unable to perform the suggested occupations if he did not retain the function to work on a sustained basis, I

find that Edwards did have an impairment meeting or medically equaling one of those listed impairments in 20 C.F.R. §§ 404.1520(d); 416.920(d) (2010).

Because Edwards presented substantial evidence demonstrating disability by way of his physical impairments during the period at issue, it is not necessary to reach his claims regarding his mental impairments. I therefore find that granting DIB and SSI benefits is appropriate, and accordingly grant summary judgment in favor of the plaintiff.


IV

For the foregoing reasons, the defendant's Motion for Summary Judgment will be denied, and the plaintiff's Motion for Summary Judgment will be granted. A final judgment will be entered reversing the Commissioner's final decision, and remanding the case for calculation and payment of benefits.

DATED: April 19, 2011

/s/  JAMES P. JONES
United States District Judge